BOYCE STEWART v. C. W. GREENFIELD and WIFE.
AND
NANNIE A. GREENFIELD v. BOYCE STEWART et al.

1. HUSBAND AND WIFE. *Separate estate. Trustee.* A trustee having the legal title may dispose of the property so as to defeat the rights of the *cestui que trust* to a *bona fide* purchaser, for valuable consideration, without notice of the trust.

2. SAME. *Notice to agent.* But where one deals through an agent, with the trustee of a married woman, and the agent knows the transaction involves property of the married woman, her rights will be protected·

FROM MONTGOMERY.

Appeal from the Chancery Court at Clarksville. GEO. E. SEAY, Ch.

SMITH & LURTON for complainants.

J. W. JUDD and J. L. YANCY for defendants.

DEADERICK, C. J., delivered the opinion of the court.

On December 30, 1873, Duncan Marr conveyed 360 acres of land in Montgomery county, to Nannie A. Greenfield for life, with remainder to her husband, the defendant, C. W. Greenfield, if living at her death, if not, to her children. The contract of purchase was made by defendant, C. W., for the sum of about $10,800. For this sum the said C. W. Greenfield executed his three notes, each for the sum of $2,175, due respectively at one, two and three years from date, and transferred . in payment of the balance of

about $4,300 of the purchase money, that sum in notes payable to himself by other parties. A lien was retained upon the face of the deed for the payment of all of said notes.

Complainant Stewart, at the time of the sale and conveyance to Mrs. Greenfield, held a mortgage on said tract of land to secure some $4,000 or $5,000 of indebtedness of Marr to him, which was then about due. It was agreed between C. W. Greenfield, Marr and Stewart's attorney, that Stewart would accept the purchase money notes, or enough of them to secure his debt, and the conveyance was made of the land to Mrs. Greenfield with his assent, and the subsequent approval of Stewart. The notes were all placed in the hands of said attorney, and he delivered the $4,300 of notes on third parties to Marr and retained the three notes of $2,175, they aggregating a sum sufficient to pay the mortgage debt.

No payment having been made on either of said three notes retained by Stewart, on April 23, 1875, he filed the original bill in this cause against Greenfield and wife, to enforce the lien retained upon the land for their satisfaction.

Mrs. Greenfield answered, filing her answer as a cross-bill, alleging that the $4,300 of notes of third persons transferred by her husband to Marr, were her separate property, derived from sale of her lands, and which notes her husband was to have held as her trustee, and were to have been invested in interest bearing securities for her sole and separate use. The cross-bill alleges that her husband violated the trust

by investing said notes in the purchase of said land, against her desire and over her protest; that the land was sold to her husband by one Johnson, agent of Marr, by means of false and fraudulent representations, at double its value, and that Stewart is not an innocent purchaser of said notes for valuable consideration, but took them for other debts due him.

Her husband, Marr and Stewart are made defendants to this cross-bill. It prays for a rescission of the contract, and that the land be sold to repay her the $4,300 of notes used in its purchase, or that she be assigned a part of said land, representing her proportion of the purchase price, free from the lien of Stewart.  C. W. Greenfield admits the truth of the allegations of the answer.  The other defendants, Stewart and Marr, deny in their answers all knowledge of the existence of the separate estate claimed in the cross-bill, and the fraud charged.

Stewart sets out the character and amount of his original debt, and the agreement between Marr, Greenfield and himself, that the land might be conveyed to Greenfield, and that notes for purchase money should be placed in his hands to secure his debt, and insists that he is entitled to enforce the vendor's lien for the satisfaction of his claim, or to foreclose his mortgage.

Upon the hearing the chancellor dismissed the cross-bill, and directed the sale of the land as prayed for in the original bill.

Mrs. Greenfield appealed from the chancellor's decree dismissing her cross-bill, and her husband has also appealed.

The Referees recommend an affirmance of the decree, and the complainant in the cross-bill excepts to the report.

The complainant in the original bill also excepts to so much of the report as finds that the $4,300 of notes was the separate estate of Mrs. Greenfield.

Much proof has been taken and the cause has been elaborately argued. It appears that by conveyances Mrs. Greenfield owned two tracts of land in her own right, but these conveyances did not create a separate estate in the wife, nor restrict the marital rights of the husband in the wife's land. These tracts were sold and conveyed by the joint deeds of husband and wife, with no words in either the deeds or the notes showing such estate as the wife claims. The deeds, upon their face, recite that the notes for the purchase money were made payable to the husband alone, as were the $4,300 of notes paid upon the Marr land, although it does appear that these last mentioned notes were derived from the proceeds of the sale of the wife's land. It also appears that sometime before the sale of the wife's lands, and the purchase of the Marr land, Greenfield agreed with his wife that he would hold the wife's means in his hands as her separate estate, and so invest them. The lands of the wife were sold for about $9,500, and the payments therefor made to the husband, and the notes for deferred payments were taken payable to him. Part of the proceeds thereof were invested in a house and lot in Clarksville, and improvements made thereon.

These transactions indicate that the husband, while

a trustee, with his wife's consent, used the fund as he deemed best for the benefit of the wife, and there is no reason to believe that he did not deem the investment in the Marr land safe and judicious. It does appear that the wife was opposed to such investment, because she did not think the place worth as much as the husband did, and never consented to it. He was sanguine that it could be sold in a very short time at a handsome profit. Greenfield and wife moved on the Marr land, and lived upon it for about a year. And although she says she never became reconciled to its purchase, yet she took no steps to be relieved of it until after Stewart filed his bill to enforce the payment of the unpaid purchase money. She says that she did not know until then that any part of her money or means had been used in its purchase. But she knew her husband had no other means of paying for the land, and she admits that she had suspected that her means had been so invested, and that the propriety of such investment had been frequently discussed.

Assuming that the $4,300 were the separate estate of the wife, still it is very clear that Stewart had no knowledge of it, and we think it is also established that Bailey, his counsel, who conducted the negotiations and consummated the arrangements on his behalf, had no notice that could affect his principal. Nothing was said to put him on inquiry, nor was there anything in the transaction to give such notice, and the postponement of the time of payment of Stewart's debt and waiver of his original mortgage on the land constitute a valuable and sufficient consideration for the

transfer of the purchase money notes made to him before their maturity.

These facts, connected with transfer of the notes, we consider abundantly sustained by the evidence. A trustee having the legal title may dispose of the property so as to defeat the rights of the *cestui que trust*, to a *bona fide* purchaser, for a valuable consideration, without notice of the trusts: Story Eq., secs. 977, 977 *a;* 1 Perry on Trusts, sec. 218.

In this case the trust was created by the verbal agreement between the husband and the wife, of which neither Stewart nor his attorney had any notice.

In so far, therefore, as the cross-bill sought to postpone Stewart's claim to that set up for the trust fund paid to Marr, we are of opinion it was properly dismissed. But we are also satisfied that Johnson, who negotiated the sale with Greenfield, knew at the time it was completed and the $4,300 of notes were paid upon the purchase, that nearly all of those notes were the proceeds of the sale of the wife's land which she agreed to sell upon condition that the proceeds of sale should be held as her separate estate; and knew also of her opposition to the investment. Johnson was the agent in said sale of Marr, and it was through him it was effected, and notice to him was notice to his principal.

It may be that Mrs. Greenfield believed that her funds had gone into the payment for said land, but she swears she did not know it until the bill in this case was filed. While there are circumstances from which such knowledge might be proved, there is on

the other hand knowledge that she did not know it, and no direct evidence to the contrary. Even if she had had such information, it is apparent from the record, she never assented to such appropriation before it was made, and we do not think there is such proof of ratification as should bind her. The payment, therefore, of such part of the $4,300 as belonged to her, was wrongfully made, and she may have a recovery against Marr to that extent. But the claim of Stewart is entitled to priority of satisfaction out of the whole tract, and then the residue or a sufficiency to reimburse Mrs. Greenfield shall be applied to her debt.

The land will be sold, the costs paid out of proceeds, and then the residue applied as above indicated.

The exceptions will be allowed, so far as the dismissal of Mrs. Greenfield's cross-bill, and refusal of all relief to her is recommended, etc., and in other respects disallowed, and the chancellor's decree will be modified in accordance with this opinion.